Please call the next case. 424-0375-WC Tim Menefee Appellant by Stephen Kelly v. Illinois Workers' Compensation Comm'n at All, City of Peoria, Appalachia by Kevin Day. Mr. Kelly, you may proceed. Thank you. Good morning, Justices. May it please the Court, Opposing Counsel, thank you for your time in this matter. I represent Mr. Menefee the Appellant in this case, and this appeal really involves one issue. The issue is whether or not there is sufficient evidence to establish a temporary partial disability award. I will state this for the record, and I did this in the oral argument in the circuit court. We agree with the average wage of the commission that was awarded prior. That average wage my was making at the time of the injury was $1,238.67. Under Section 820 Illinois ILCS 305-8A, it gives us the guideline and boundaries of what I have to establish to get my client the award of temporary partial disability. There is no dispute in the fact that my client had a work injury. We tried this case on a 19B1. The issues of causation and my client not being at max medical improvement were ruled upon by the commission as a result of those issues. Those issues have not been appealed. It is clear in this case the time period that is in question here is this, August 31, 2021 to May 10, 2023. That is the time period where my client took employment at another employer in light of the fact that the City of Peoria did not provide him a job. It was a company called MPSI Security. The facts in this case establish he took this job. It was a carrier for running money back and forth for a company. It was established in this case that he had earnings, and that was an exhibit utilized by the City of Peoria, number 9, which is their That was a payout sheet from the other employer, MPSI. It is my position that that gives us the guidance we need to award the temporary partial disability. We can calculate from that statement that my client earned approximately $5,200 from August 31, 2021 to February 13, 2022. We can calculate that time frame to establish that if we take 23 and six-sevenths weeks and divide it into that total earnings, that he was earning approximately $219.31 per week. If we look at the Illinois Workers' Compensation Act and the temporary partial disability, and you take it to his average of the wage, my client would be entitled to a temporary partial disability of $682.97. There is no evidence my client was unable to work. He We went through a long road on this case. He is an injured worker who lost his job in January 2021. He wanted to try to go back to work. The employer did not allow him to do so. He's underwent at least the time of trial two surgeries. He was attempting to get a third surgery at the time of trial. That was awarded. I think that the evidence in this case clearly establishes that he's entitled to the temporary partial within the time frame that he worked for a third party. What best evidence is there than a statement from that third party giving us those earnings of what he earned? Because as the statute says that he's entitled to, in part of the calculations, the gross earnings from another place of employment, not the net earnings. I think that's what the statement establishes. We respect the request that you modify or at least reverse the commission decision as it relates to my client's entitlement to temporary partial disabilities. We satisfied the elements of 820 ILCS 3058A. Thank you. Questions from the court for Mr. Kelly? Counsel, how can we rely upon these work records for the salary? There seem to be some holes with regard to the testimony of your client and the completeness of the records. Your Honor, I believe that the completeness of the record offered by this third party entity, there's no questions in relation to what they provided. The subpoena was sent out by the city of Peoria for this document. It was actually their exhibit that we're looking at here. Who better to provide us with that information than the employer who's hired him and in charge of the books? I'm sure, Your Honor, you've seen many, many cases where these injured workers have a lot to say about what they're earning or what's coming out of their pocket, not coming out of their pocket. My client has a high school education. To talk to him about temporary partial disability, he has no idea what that is. But what happened in this case is he did get a job. He went out and got a job. I think the best evidence of this case is from a third party, not from my client, not from his wife, not from me. This is someone who's not involved in the case and basically gives us this documentation. It certainly was not challenged by the city of Peoria. They offered it. In fact, they're the ones who subpoenaed it. Since this was a 19B1 trial, which is a unique bird under the Illinois Workers' Compensation Act, they actually listed the entity, MPSI Security, as a witness before trial. They chose not to call them. I take that to mean that this was sufficient evidence in their mind to get this calculation. Is it true that your client testified that his work for MPSI was irregular and that he sometimes would go months without working for that entity? I'm certain that it was months. If that was something he said, I think the other evidence in this case established something otherwise. It is clear in this case, his testimony is that he was paid on a flat rate. That's on page 498. It was also clear in his testimony that he was paid $200 a ride. He also testified that was during the time period we're talking about. If that's the case, and that's the case here, he was hired by job. It wasn't a regular job. It fit within his restrictions. It goes back to my position that what document is better than the one that an outside entity provided us to what they paid him? He was under cross-examination. He was asked multiple questions by the city of Peoria. He answered the questions with his best ability. Once again, I fall back to this document we have here is the best evidence. I think the commission erred when they said there was no evidence to give us a formula to give him a formula. Is it important for MPSI at the time of his accident? No. Okay. In your brief on page 9, what I understood to be the recap of the relevant testimony, the testimony relevant to the issue, is just that he was employed at MPSI or MSPI? MPSI. Oh, thank you. That he had his own business. He didn't make much money. And that was really it. That's all the testimony you argued about. I don't see a mention of the payroll record from MPSI. It is part of the record. It is part of the information regarding his testimony. It is the entity in question. Certainly, I apologize for not putting that in my brief, but I think that the court, I request that they look at that document as part of the evidence in the case. And I certainly don't want my client to suffer because I didn't mention that in my brief. It's been part of this process and appeal all the way through this document. And to answer maybe another question coming regarding these other businesses, he had another business, but the only evidence in this case shows that he wasn't making money doing that. In fact, he was losing money at this other business. And certainly, the city of Peoria investigated that through investigators and subpoenas and subpoenaed his tax returns. Where did you say that record was in the record? You're talking about the document? Yeah, the records from MPSI. C-101, C-102. Any other questions? I don't see any. Thank you, Mr. Kelly. You'll have time in reply. Thank you, Your Honor. Mr. Day, you may respond. Thank you, Your Honor. Kevin Day for the Appellee, the city of Peoria. May it please the court. Good morning, counsel. The commission's denial of Mr. Menefee's request for temporary partial disability benefits is not against the manifest weight of the evidence. It is uncontested that the manifest weight standard should be applied to the sole issue before this court on appeal. The commission's denial of benefits is a factual determination based on the entire record before this court, which is only against the manifest weight of the evidence if the opposite conclusion is clearly apparent. The test is not whether this court or any other tribunal could reach a different conclusion. It is simply whether or not the commission's decision is supported by the record and the applicable law. A complete review of the record before this court and a complete review of the applicable case law, which is cited within our brief, leaves the definite and firm conclusion that the arbitrator commission and the circuit court have correctly held that Mr. Menefee failed to prove his entitlement to temporary partial disability benefits. In Illinois, it is well established that the appellant bears the burden of establishing all elements of his claim by preponderance of the evidence at the commission level. Why don't you just tell us why he wasn't entitled to temporary partial disability benefits commencing in August? The primary issue here, your honor, is the lack of evidence. The claimant has to meet his burden of proving his income. It's a true mathematical calculation. It can't be speculative. And we've cited two cases within our brief that stand for the proposition that you cannot award benefits in a workers' compensation trial based on speculation or conjecture. Mr. Menefee provided testimony that was vague. It was intentionally vague. The holding of the commission was that, and I quote relevant part, the amount of TPD benefits is too speculative to discern based on the scant evidence provided about his current earnings. He testified... So what was that evidence, Mr. Day? Pardon me, your honor? From your understanding, what was that evidence? It sounds like you folks solicited evidence that he was working and was being paid. You're correct, your honor. As the court knows, as part of a 19B1 proceeding, it's unique from the standpoint that each party submits documents. Mr. Kelly and his client submitted documents into the record. The city then had an opportunity to supplement that record and submit our evidence. What we had provided was a portion of the time period in which Mr. Menefee is seeking benefits. That was a subpoena response. We knew that the TPD issue was going to be there, so we provided some documents that don't even cover the entire portion for which he is seeking benefits. But the critical issue here is that he testified under oath that he owns and operates a precision products and coatings. He said he operates it. And if you look in the record, you will not see any documents. You won't see really any evidence regarding the exact earnings from that job. He kind of vaguely stated that, oh, you know, it wasn't supposed to supplement the income that lost from the city of Peoria, but there was no figures provided. The testimony is clear here, and the record is clear based on the lack of documents, that he owns and operates a second business. Mr. Kelly and his argument really didn't touch on that because there's a gaping hole in the appellate record here. It has to be a mathematical calculation. The city would be prejudiced if even one cent or one dollar is lost in the TPD calculation. It's the petitioner's burden, and he didn't meet it, Your Honor. And really, the issue here is even if you look at the MPSI earnings, it doesn't cover the entire time period. I, at length, cross-examined Mr. Menefee trying to pull this information out of him, because I have a duty to try to get every dollar and every cent on the record to adjust for the temporary partial earnings that he was making at the time. And his testimony was very clear. There was no facts, no dollar figures presented, particularly for precision products and codings. It's his burden, and he didn't meet it. And as I mentioned, a decision cannot be based on speculation or conjecture, and that's essentially, respectfully, what the appellant is asking this court to do. Under the highly deferential manifest way of the evidence standard, it's not this court's job, respectfully, to re-weigh the evidence. And part of this factual determination, based on credibility and based on the record before the commission, the commission held that the evidence was scant, that there was not sufficient evidence with which to make an appropriate calculation of temporary partial disability benefits. Again, given the highly deferential standard of review here, we would ask that the decision of the commission be affirmed. I don't believe that the record before this court supports a contrary conclusion, and I don't believe the record before this court establishes that petitioner can meet his burden of establishing entitlement to TPD benefits. I'd be happy to answer any other questions the court may have. Questions from the court? Thank you. Thank you, Mr. Day. Mr. Kelly, you may reply. Just a real brief reply in the sense that the section of the Workers' Compensation Act that deals with temporary partial disability outlines what the formula is and what we have to establish. I believe we've done so, and it's done so with the documents of a third party as relates to the other businesses. There's no evidence that he had an income to that. He was asked on cross-examination about that, and it didn't show that there was any type of income, and there was actually subpoenas sent out for his tax returns. So, believe me, the City of Peoria has turned every stone on this case, as you can see through the surveillance. You can see through the way the case was handled, and I think that the commission, the arbitrator, commented on some of the actions of the City of Peoria on some of these issues. No stone was left unturned on this case, and they went and got all the information on my client, and any money or income relation to his other businesses, there was none, and the only evidence is his testimony. He was cross-examined. He was asked questions about that. We believe we've met our burden in this case. We respect the request that you award my client temporary partial disability. Just one more question, Mr. Kelly, and it seems to me, just trying to get into the head of the arbitrator and why the commission accepted its finding, that there's two issues. One is the documents, the payroll records, don't cover the full-time period. That, coupled with, we're told, the arbitrator found to be vague testimony with regard to not working full-time, not working regularly. Those two facts put together seem to be the argument that the burden was not accomplished. Thank you for that point of view in the sense that, as regards to number one, when we send these subpoenas out and these subpoenas come in, quite often we have a trial date in May of 2023, yet these employers send you records that are maybe a month or two short, just because of the timing of the case and the timing of when you get to trial versus when you have to notice it up under workers' compensation rules. So, quite often, there may be a month or two missed in these cases just because of the timing of when you get the documents, when you issue the subpoena, to when the case goes to trial. I believe this court, I believe the commission, I believe the arbitrator could have adopted the time period we have here to calculate it. It's months, it's not weeks, it's not, we have cases and you've seen cases where these jobs have been two weeks a week and you're trying to calculate what's a fair number. This is August 2021 through February 2022 and I think if this case went to trial in July of 2021, we would have it all the way up to May of 2021. It's just the timing of the subpoena and timing of getting the evidence. And then secondly, it relates to his testimony, the vagueness. He wasn't vague regarding this job. I mean, he answered the questions and once again, I fall back upon a lay witness of someone who's a worker his whole life. This gentleman lost his job a month away from vesting in the IMRF and so he just tried to do anything to get back to work. You saw the grievance over him losing his job. He testified and he testified the best he could and I don't think it was vague. If I had a feeling on this when I tried this case, counsel and I put a lot of effort in this case. It was a long case in Rock Island, it was nine hours. Everybody was over in Rock Island even though it's a Peoria case. I think it was one of those situations where my client and I won all the issues and this one is one I didn't win. And when we got to the commission level on this issue, a new commissioner was appointed. I'm uncertain whether or not the whole transcript was focused upon with all the issues that were on the table, but now that we're here in front of you with this one issue, I think you can look at this and focus on this and look at this evidence and you have the ability. I think it's against the manifest weight. We have the information, he was working and the section of the law we're talking about entitles him to that award. Okay, any further questions from the court? Okay, well thank you counsel both for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue and at this time the clerk of our court will escort you out of our remote courtroom and we'll proceed to the next case. Thank you. Thank you to all, have a good.